UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| LETICIA WOODS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> vs.<br><br>NATIONAL CREDIT ADJUSTERS LLC and REVIVER FINANCIAL LLC,<br><br>    Defendants. | Case No.: 18-cv-248<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Leticia Woods is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff, debts allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant National Credit Adjusters LLC ("NCA") is a foreign limited liability company with its principal offices located at 327 West 4th Avenue, Hutchison, Kansas 67501.

7. NCA does substantial business in Wisconsin and has a registered agent for service of process at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

8. NCA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. NCA is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. NCA is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

11. Defendant Reviver Financial LLC ("Reviver") is a foreign limited liability company with its principal offices located at 327 West 4th Avenue, Hutchison, Kansas 67501.

12. Reviver does substantial business in Wisconsin and has a registered agent for service of process at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

13. Upon information and belief, although a separate legal entity, Reviver is an affiliate of NCA.

14. Upon information and belief, Reviver is engaged in the business of purchasing and collecting on consumer debts.

15. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction in which the money, property, insurance, or

services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

16. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Solutions, Inc.*, No. CV 16 5864, 2017 U.S. Dist. LEXIS 197747 (E.D. Pa. Dec. 1, 2017).

17. The primary purpose of Reviver's business, and Reviver's principal purpose, is the collection of consumer debts. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

18. In addition to telephone and mail-based debt collection activities, Reviver is a frequent litigant in Wisconsin courts. A general search on Wisconsin Circuit Court Access ("CCAP") for Reviver returns 905 actions filed. Upon information and belief, virtually all or actually all of those cases are collection actions against Wisconsin consumers.

3

19. Reviver is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

20. A company meeting the definition of a "debt collector" (here, Reviver) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (citing *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404-05 (3d Cir. 2000)).

## FACTS

21. Sometime prior to September 26, 2016, Plaintiff obtained a consumer loan through an entity known as "CashNet." This loan was used only for personal, family, or household purposes.

22. Sometime prior to September 26, 2016, Plaintiff's loan with "CashNet" was sold or otherwise assigned to Reviver.

23. On or about September 26, 2016, Gurstel Chargo, a law firm specializing in the collection of consumer debts, mailed Plaintiff a debt collection letter regarding an alleged debt, allegedly owed to Reviver. A copy of this letter is attached to this Complaint as Exhibit A.

24. Exhibit A contains the following:

RE: Current Creditor: Reviver Financial, LLC
Original Creditor: Cash Net - !! *also RiSE (separate issue)*
Account Number: ****5741
Current Balance: $914.00
Our file: ▇6582

Exhibit A.

25. <u>Exhibit A</u> also contains the following:

> This firm has been retained to represent Reviver Financial, LLC in collecting the above-referenced account. Our client informs us, as of the date of this letter, you owe $914.00. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

<u>Exhibit A</u>.

26. <u>Exhibit A</u> states that, as of September 26, 2016, Plaintiff's debt that was originally owed to "Cash Net II" had been assigned to "Current Creditor: Reviver Financial, LLC."

27. <u>Exhibit A</u> further states that the account number associated with the debt ended in 5741, and, as of September 26, 2016, the amount of the debt owed to Reviver was $914.00.

28. <u>Exhibit A</u> further states that "This firm has been retained to represent Reviver Financial, LLC in collecting the above-referenced account."

29. On or about May 25, 2017, NCA mailed a debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this complaint as <u>Exhibit B</u>.

30. Upon information and belief, <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

31. Upon information and belief, <u>Exhibit B</u> is a form debt collection letter, used by NCA to attempt to collect alleged debts.

32. <u>Exhibit B</u> contains the following:

> Original Creditor:        CashNet
> Account Number:      ▮▮▮▮5741
> Current Balance:        $914.00
> NCA Reference Number  ▮▮▮▮3667

<u>Exhibit B</u>.

33. <u>Exhibit B</u> was attempting to collect the same debt as the debt referenced in <u>Exhibit A</u>. <u>Exhibit B</u> references the same original creditor, account number, and balance as <u>Exhibit A</u>.

5

34. Exhibit B does not state the name of the current creditor. Instead, Exhibit B states only that the "Original Creditor" was "CashNet."

35. Upon information and belief, the debt NCA was attempting to collect with Exhibit B was owed to Reviver at the time Exhibit B was mailed.

36. On or about June 13, 2017, NCA mailed a debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this complaint as Exhibit C.

37. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

38. Upon information and belief, Exhibit C is a form debt collection letter, used by NCA to attempt to collect alleged debts.

39. Exhibit C contains the following:

```
Original Creditor:      CashNet
Account Number:         ████5741
Current Balance:        $914.00
NCA Reference Number    ████3667
```

Exhibit C.

40. Exhibit C was attempting to collect the same debt as the debt referenced in Exhibit A. Exhibit C references the same original creditor, account number, and balance as Exhibit A.

41. Exhibit C does not state the name of the current creditor. Instead, Exhibit C states only that the "Original Creditor" was "CashNet."

42. Upon information and belief, the debt NCA was attempting to collect with Exhibit C was owed to Reviver at the time Exhibit C was mailed.

43. Exhibits B and C are false, deceptive, misleading, and confusing as to the identity of the creditor and the character of the debt.

6

44. Upon information and belief, the debt referenced in Exhibits B and C was owed to Reviver at the time Exhibits B and C were mailed.

45. On the face of Exhibits B and C it is impossible to determine the name of the creditor of the debt in question and whether the debt has been sold or otherwise assigned from the "Original Creditor."

46. The unsophisticated consumer would be confused as to the character of the account, whether the debt had been sold to a third-party debt buyer, and if so, to whom.

47. NCA's misrepresentation is a material false statement about the character of the account. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("Knowing the current creditor 'potentially affects the debtor in the most basic ways . . . .'") (quoting *Eun Joo Lee v. Forster & Garbus LLP*, 926 F.Supp. 2d 482, 488 (E.D.N.Y. Mar. 1, 2013); *see also e.g., Hepsen v. J.C. Christensen & Assocs.*, 2009 U.S. Dist. LEXIS 92717, at *14 (M.D. Fla. Sept. 22, 2009), *aff'd by Hepsen v. Resurgent Capital Servs., LP*, 383 Fed. Appx. 877 (11th Cir. 2010).

48. Even a sophisticated consumer (or her attorney), who might understand that debts can be transferred, bought and sold, would not be able to determine who actually holds the debt from reading Exhibits B and C.

49. Exhibits B and C identify the original creditor in a way that would confuse and mislead the unsophisticated consumer.

50. Upon information and belief, NCA, who mailed Plaintiff Exhibits B and C is an affiliate of Reviver, the current creditor of the account.

51. Upon information and belief, NCA and Reviver hide the name of the current creditor to deceive, mislead, and confuse debtors into believing the debt has not been sold, which has important implications for information in the debtors' credit reports. *See Banneck v. HSBC*

7

*Bank USA, N.A.*, 2016 U.S. Dist. LEXIS 79980, at \*21-23 (N.D. Calif. June 20, 2016) (discussing the reporting of consumer debts in cases of sale to a third-party debt buyer).

52. Plaintiff was confused by Exhibits B and C.

53. The unsophisticated consumer would be confused by Exhibits B and C.

54. Plaintiff had to spend time and money investigating Exhibits B and C, and the consequences of any potential responses to Exhibits B and C.

55. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to obtain counsel on the consequences of Exhibits B and C.

### *The FDCPA*

56. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 \*9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at \*6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at

*8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

57. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15

U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

58. A debt collector cannot make confusing representations about the identity of the creditor in a collection letter.

59. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

60. 15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of—the character, amount, or legal status of any debt."

61. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

62. 15 U.S.C. § 1692f generally prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt."

63. Another section of the FDCPA requires the debt collector to provide written notice containing "the name of the creditor to whom the debt is owed;" 15 U.S.C. § 1692g(a)(2).

64. To satisfy § 1692g(a)(2), a debt collector may provide "the name under which [the creditor] usually transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation." *Blarek v. Encore Receivable Mgmt.*, No. 06-cv-420-WEC, 2007 U.S. Dist. LEXIS 22549 at *22 (E.D. Wis. Mar. 27, 2007).

65. "A particularly non-obvious acronym can on its face constitute a plainly confusing statement in violation of § 1692g(a)(2)." *Blarek*, 2007 U.S. Dist. LEXIS 22549, at *23.

66. The Seventh Circuit has held that a debt collector must state the required disclosures in a non-confusing manner. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000).

67. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692g(a)(2) are the same. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016):

> Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.

68. Plaintiff does not bring a claim under § 1692g(a)(2). However, the analysis above applies equally to Plaintiff's claims under 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10) for misstating the identity of the current creditor. *See Janetos*, 825 F.3d at 324-25 ("Knowing the current creditor 'potentially affects the debtor in the most basic ways, such as what the debtor should write after "pay to the order of" on the payment check to ensure that the debt is satisfied.'" (quoting *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 488 (E.D.N.Y. Mar. 1, 2013)).

### *The WCA*

69. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

70. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

11

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

71. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

72. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

73. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

74. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

75. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

76. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

77. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

78. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## **COUNT I – FDCPA**

79. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80. Exhibits B and C contain false, deceptive, misleading, and confusing statements as to the identity of the current creditor.

81. Defendant's misstatement of the name of the creditor is a false representation or deceptive means to collect or attempt to collect any debt.

82. Defendant's misstatement of the name of the creditor is a false and misleading statement of the character and legal status of the alleged debt.

83. Defendant's misstatement of the name of the creditor is an unfair means of collecting or attempting to collect the alleged debt.

84. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692f.

## **COUNT II – WCA**

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. Exhibits B and C contain false, deceptive, misleading, and confusing statements as to the identity of the current creditor.

13

87. Defendant's misstatement of the name of the creditor is a false representation or deceptive means to collect or attempt to collect any debt.

88. Defendant's misstatement of the name of the creditor is a false and misleading statement of the character and legal status of the alleged debt.

89. Defendant's misstatement of the name of the creditor is an unfair means of collecting or attempting to collect the alleged debt.

90. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## CLASS ALLEGATIONS

91. Plaintiff brings this action on behalf of two Classes.

92. Class I ("Original Creditor Name Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent a debt collection letter (c) between February 19, 2017 and February 19, 2018, inclusive, (d) that was not returned by the postal service, (e) where the debt collection letter stated the name of an "Original Creditor" (f) but did not state the name of a "Current Creditor," (g) and the debt was incurred for personal, family, or household purposes.

93. Class II ("Reviver Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent a debt collection letter (c) between February 19, 2017 and February 19, 2018, inclusive, (d) that was not returned by the postal service, (e) where the debt collection letter stated the name of an "Original Creditor" (f) but did not state the name of a "Current Creditor," (g) where the debt was owed to Reviver, (h) and was incurred for personal, family, or household purposes.

94. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

95. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and WCA.

96. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

97. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

98. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

99. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 19, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)

15

Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com